PAUL B. SNYDER
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2209
Tacoma, WA 98402

✓ FILED
___ LODGED
___ RECEIVED

**December 6, 2007**

MARK L. HATCHER
CLERK U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
_____DEPUTY

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>CHARLES DENNEY<br>HEATHER DENNEY,<br><br>                Debtors. | Case No. 06-41877 |
| MARK D. WALDRON, Chapter 7 Trustee for the Estate of Charles & Heather Denney,<br><br>                Plaintiff,<br><br>    v.<br><br>A+ PLUS CASH, LLC, a limited liability company and THEODORE JACOBS and JANE DOE JACOBS, and the marital community composed thereof, LENDING AND LEASING 4U, LLC, a limited liability company,<br><br>                Defendants. | Adversary No. 07-4043<br><br>**MEMORANDUM DECISION**<br><br>**NOT FOR PUBLICATION** |

This matter came for trial on October 29, and November 1, 2007, on the Complaint to Determine Validity of Lien, Consumer Protection Act Violation and for Damages filed by the Chapter 7 Trustee (Plaintiff) for the estate of Charles and Heather Denney (Debtors) against A+ Plus Cash, LLC, Theodore Jacobs and Jane Doe Jacobs and Lending and Leasing 4U,

MEMORANDUM DECISION - 1

LLC (collectively referred to herein as Defendants). This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law as required by Fed. R. Bankr. P. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2), as it is both a matter that arises in a case under Title 11 and a matter that arises under Title 11. The Court has jurisdiction to enter a final order under 28 U.S.C. § 1334(b) and 28 U.S.C. § 151. Many of the facts are in dispute, but based on the most credible evidence, arguments of counsel, and pleadings submitted, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT AND PROCEDURAL HISTORY

Defendant Lending & Leasing 4U, LLC (Lending & Leasing) is a loan facilitator. Defendant A+ Plus Cash, LLC (A+ Plus) is a private lender. Defendant Theodore Jacobs (Jacobs) is an individual with an ownership interest in A+ Plus.

Charles Denny is college educated and is in the business of selling insurance related products. Heather Denny has a high school education and has worked as a customer service representative. The Debtors have minimal assets, except for two residential parcels of real estate, one that is leased to a third party (Graham Property), and their personal residence (Rainier Property) that is periodically partially leased to family members to assist the Debtors in meeting expenses.

In late 2005, the Debtors testified that they were becoming increasingly delinquent on the mortgages and real estate taxes incident to both the Graham and Rainier Properties, and also fell behind in paying their credit card, medical and other personal bills. The Debtors stated that they originally considered borrowing money directly from a bank or refinancing the Graham Property, but were concerned that they would not qualify for a regular bank loan or refinance because of their poor credit score. The Debtors anticipated that a short term loan

MEMORANDUM DECISION - 2

would assist them to bridge their income shortfall until Mr. Denny's employment wages increased.

The Debtors first became aware of the possibility of obtaining a private loan through a newspaper advertisement placed by Lending & Leasing. After telephoning Lending & Leasing, they met with its representative, Craig Stevenson, at their home on January 6, 2006. The Debtors stated that they informed Mr. Stevenson that they anticipated that they would need a minimum loan of $25,000, after fees. At the January 6, 2006 meeting, the Debtors signed a Loan Request Summary of Transaction form (Defendants' Exhibit 1). Next to the line item for "Net to Customer" is a handwritten entry indicating that the proceeds would be used "to pay off Bills out [sic] Escrow." The most credible evidence is that the form was only partially complete, in that no fee amounts were listed, only categories of charges, when signed by the Debtors and returned to Mr. Stevenson. The Debtors were not provided copies of the loan application or any other documents at that meeting.

At the meeting on January 6, 2006, the Debtors also discussed with Mr. Stevenson a spreadsheet they prepared of bills owing (Defendants' Exhibit 23). On this spreadsheet, the Debtors list bills totaling $11,175.04. Heather Denney testified that the majority of the bills listed on Defendants' Exhibit 23 were personal debts.

In late January, 2006, Mr. Denney then met with Mr. Stevenson and the owner of Lending & Leasing, Darin Gearhart. The most credible evidence indicates that this was the first time that Mr. Denny was advised that the loan should be for business purposes. Although Mr. Denny indicated he understood this requirement, credible testimony also indicates that he reiterated to Mr. Stevenson and Mr. Gearhart that the loan proceeds were also needed to pay personal bills, such as the past due medical expenses for their daughter.

MEMORANDUM DECISION - 3

In early February, 2006, at Lending & Leasing's request, the Debtors returned a completed financial statement (Defendants' Exhibit 10), second Loan Request Summary of Transaction form with an additional section entitled "Loan Purpose and Collateral Description" (Defendants' Exhibit 6), copies of their residential lease agreements for the Graham and Rainier Properties (Defendants' Exhibits 7, 8 and 9), and the spreadsheet containing a summary of their bills (Defendants' Exhibit 23). The Debtors were subsequently advised that their loan was approved and closing would occur at Chicago Title Insurance Company on February 13, 2006.

The Debtors met at closing with a representative from the escrow company. No party representing the Defendants was present. Upon review of the closing documents, the Debtors testified that they became aware for the first time that their loan proceeds would be much less than expected. Although the most credible evidence indicates that they no longer expected to receive $25,000 net, they testified that they were surprised that the total proceeds they were to receive were now less than $10,000. They were also concerned that the points to be given to A+ Plus were excessive. After contacting Lending & Leasing, the points to A+ Plus were lowered by $500. The Debtors signed the required promissory note and closing documents, and eventually received total proceeds in the amount of $9,052.04. The principal amount of the loan was $20,000, and the loan term was for six months.

Although dissatisfied with the amount of the loan and fees, the Debtors testified that they closed the loan because they were in difficult financial circumstances and in desperate need of funds. As part of the closing, the real estate mortgages and taxes on both parcels were paid current to protect A+ Plus on its second position security interest on the Graham

MEMORANDUM DECISION - 4

Property and third position security interest on the Rainier Property. The remaining proceeds were used by the Debtors almost entirely to pay off consumer debt.

The Debtors filed bankruptcy under Chapter 7, Title 11, on August 18, 2006. They received a discharge on October 3, 2007. The Plaintiff filed this adversary complaint on March 27, 2007, to determine the validity of A+ Plus's lien on the Debtors' property and for damages. On September 6, 2007, the Court entered oral findings, conclusions of law and an order on summary judgment permitting the Plaintiff to avoid the Deed of Trust filed by A+ Plus against the Debtors' Graham Property. Trial was scheduled for October 10, 2007, for the remaining issues raised by the Plaintiff. On October 10, 2007, the Defendants made an oral motion to continue the trial date in order to depose the Debtors, after the Court denied the Defendants' Motion in Limine to Exclude Witnesses and Exhibits and Motion in Limine to Bar Parol Evidence and Contradictory Testimony and Bar Testimony that Constitutes Estoppel. The trial was continued to October 29, 2007.

## CONCLUSIONS OF LAW

As a preliminary matter, the Court orally granted the Defendants' motion on November 1, 2007, to dismiss all claims against Theodore Jacobs, individually. There was no evidence admitted at trial indicating that Theodore Jacobs ever met the Debtors personally, or as an individual that he participated in the acts complained of by the Plaintiff.

### 1. **Consumer vs. Business Loan**

A crucial issue before this Court is whether the subject loan is a consumer or business loan. If the Court determines that this is a consumer loan, the estate may be entitled to damages for violation of the Washington state usury statute, Consumer Loan Act (CLA), Mortgage Broker Practices Act (MBPA), Consumer Protection Act (CPA), and the federal

Truth in Lending Act (TILA) and Regulation Z. If, however, this Court determines that this loan was for business purposes, it is exempt from coverage under these statutes and the Plaintiff's complaint fails.

When determining whether the purpose of a loan was primarily business, courts focus on the purpose the borrower actually represented at the time of the loan, not what was written on the loan application. Jansen v. Nu-West, Inc., 102 Wn. App. 432, 439-40, 6 P.3d 98, 102 (2000), as amended on reconsideration (Sept. 21, 2000). However, "[w]hen the borrower's representations are inconclusive, written statements in the loan documents may be dispositive." Castronuevo v. General Acceptance Corp., 79 Wn. App. 747, 751, 905 P.2d 387, 390 (1995). The court gives "persuasive significance" to whether the funds were actually used for personal or business purposes. Jansen, 102 Wn. App. at 440 (citing Pacesetter Real Estate, Inc. v. Fasules, 53 Wn. App. 463, 472-73, 767 P.2d 961, 967 (1989)). It is the purpose at the time of the transaction that governs. If the primary purpose of the loan at its inception was business, the borrowers' subsequent conduct is immaterial. Jansen, 102 Wn. App. at 441.

The Defendants argue that this was a business loan as indicated in the written documents signed by the Debtors. The Loan Application and Term Sheet that was signed by the Debtors, but not dated, states that the purpose of the loan is "[b]usiness-set up new CO. Rehab property." See Defendants' Exhibit 2. The eight page Promissory Note signed by the Debtors on February 13, 2006, specifically states within the Representations and Warranties section that the "Borrower is obtaining the Loan for commercial purposes." See Defendants' Exhibit 4, p.3. In addition, within the Miscellaneous provisions of that same Promissory Note, the document specifically states: "Borrower acknowledges that the transaction evidenced by

MEMORANDUM DECISION - 6

this Note is primarily for commercial, investment or business purposes as defined in R.C.W. 19.52.080, and that the provisions of R.C.W. 19.52 do not apply to this Note or Transaction." See Defendants' Exhibit 4, p.6. Neither of these sections of the Promissory Note, however, are emphasized and constitute only two sentences among eight pages of terms.

Despite the statements in these documents indicating that the loan was for business purposes, the Plaintiff argues that the Defendants were aware that this was primarily a consumer loan at its inception. The Debtors testified that they advised the Defendants throughout their course of dealings that the loan was needed primarily for the payment of personal bills and living expenses. In support, the Plaintiff and Debtors rely on the handwritten notation on the Loan Request Summary of Transaction form (Defendants' Exhibit 1) indicating that the funds were needed "to pay off Bills out [sic] Escrow." The Plaintiff also points to the spreadsheet prepared by the Debtors and given to the Defendants of bills, which were primarily personal, that Debtors intended to pay with the loan proceeds. See Defendants' Exhibit 23. In addition, the Debtors provided uncontradicted testimony that most of the proceeds were actually used for personal, family or household expenses.

Such evidence distinguishes this case from one in which a debtor merely provides unsubstantiated allegations that they orally told the lenders the funds would be used for consumer purposes. For instance, in Castronuevo, the Washington State Court of Appeals, Division 1, determined that a loan was for business purposes and exempt from usury laws where the borrowers executed affidavits and other documents stating that the loan was for business purposes and the loan proceeds were in fact used primarily to pay off business loans. The state appellate court concluded that, "we find nothing in the record to support the

MEMORANDUM DECISION - 7

conclusions that the borrowers represented anything to the lenders other than the loan proceeds would be used for business purposes." Castronuevo, 79 Wn. App. at 751.

Similarly, in Jansen, the Washington State Court of Appeals, Division 3, concluded as a matter of law that a loan was for a business purposes where the borrower failed to produce any evidence that he ever informed the lender that the loan proceeds would be spent primarily on consumer expenditures. Jansen, 102 Wn. App. at 442.

Unlike in Castronuevo or Jansen, the Debtors in this case not only testified that they represented that the funds were to be used primarily for consumer purposes, but such testimony is credible and supported by the written notation on the Loan Request Summary of Transaction form, the personal bill summary given to the Defendants, and the uncontradicted evidence that the funds were primarily used for such purposes. Such evidence allows the Court to look beyond the documents themselves, and are credible evidence that the Defendants' written agreements alone are not sufficient to establish that the purpose of the loan was primarily business. See Jansen, 102 Wn. App. at 441 ("[A] borrower's contrary oral manifestations are relevant only where it appears the lender has 'rigged' the written agreements to evade the usury laws.") (quoting Brown v. Giger, 111 Wn.2d 76, 83, 757 P.2d 523, 527 (1988)).

The Court also finds unpersuasive the Defendants' testimony that the Debtors represented that the funds were to be used for business purposes, such as to repair their rental property and to build up Mr. Denney's home office insurance business. There was little evidence presented to support these allegations, and the testimony does not seem credible given the fact that the rental property was only three years old, fully rented at the time, and the

Debtors testified that any necessary repairs, such as the carpet cleaning and replacement of windows, had occurred prior to the loan discussions.

The Court concludes that the Debtors' testimony as to the represented purpose of this loan is the more persuasive. Taken together, the evidence in support of the Plaintiff's claims is sufficient to demonstrate that the Debtors did represent at the inception of the loan that the funds were to be used for other than business purposes. Thus, the Court concludes that the most credible evidence is that this was a consumer loan.

As this was a consumer loan, the Plaintiff argues that the Defendants violated the CLA, MBPA, Washington state usury laws, the federal TILA and Regulation Z, and the CPA.

### 2. **Consumer Loan Act**

The Washington legislature enacted the CLA in 1991. See RCW 31.04.005 through 31.04.902. Recognizing that borrowers with poor credit ratings have a difficult time obtaining loans at allowable rates, the legislature enacted the CLA to "authorize higher interest rates for certain types of loans, subject to the conditions and limitations contained in this chapter in order to ensure credit availability." RCW 31.04.005.

The Plaintiff alleges that the Defendants violated the CLA by failing to be licensed. See RCW 31.04.035. A person licensed under the CLA may lend money at a rate that would otherwise violate Washington's usury statute, up to a rate that does not exceed 25 percent per annum, so long as they are licensed under this chapter. RCW 31.04.105(1).

The Court of Appeals of Washington, Division 3, however, has ruled that licensing under the CLA is a voluntary requirement. Bell v. Muller, 129 Wn. App. 177, 187-88, 118 P.3d 405, 410 (2005), review denied, 158 Wn.2d 1002, 143 P.3d 828 (2006). A lender that makes

loans at a rate that exceeds Washington's usury statute without a license potentially violates the state's usury statute, not the CLA. <u>Bell</u>, 129 Wn. App. at 187-88.

In this case, it is undisputed that the Defendants were not licensed under the CLA. Since the loan is a consumer loan, even if the interest rate charged for the loan exceeds Washington's usury statute, the lack of such a license is not a violation of the CLA entitling the Plaintiff to damages. Rather, if the loan is usurious, it is a violation of the usury statute RCW 19.52, not the CLA.

### 3. **Mortgage Broker Practices Act**

The MBPA applies to the "brokering of residential real estate loans." RCW 19.146.005. A "residential mortgage loan" is defined in part as a "loan primarily for personal, family, or household use secured by a mortgage or deed of trust on residential real estate." RCW 19.146.010(15). The Plaintiff alleges that the Defendants violated the licensing and disclosure requirements of the MBPA.

Pursuant to RCW 19.146.200(1): "A person, unless specifically exempted from this chapter under RCW 19.146.020, may not engage in the business of a mortgage broker or loan originator, without first obtaining and maintaining a license under this chapter." There is no dispute that Lending & Leasing is a mortgage broker or loan originator and that it was not licensed under the MBPA. As this was a consumer loan, Lending & Leasing violated the MBPA.

In closing arguments, counsel for the Defendants argued for the first time that A+ Plus was exempt from the MBPA as a private lender. RCW 19.146.020(1)(e) provides that "[a]ny person making or acquiring a residential mortgage loan solely with his or her own funds for his or her own investment without intending to resell the residential mortgage loans" is exempt

MEMORANDUM DECISION - 10

from this chapter. A+ Plus used its own funds for this loan and there is no evidence that A+ Plus intended to resell the loan. Accordingly, the Court concludes A+ Plus was exempt from the licensing requirements of the MBPA.

RCW 19.146.020(2) further provides, however, that those persons otherwise exempt under RCW 19.146.020(1)(e), must still comply with RCW 19.146.0201 through 19.146.080. RCW 19.146.0201 provides that it is a violation of the MBPA for a "loan originator, mortgage broker required to be licensed under this chapter, <u>or mortgage broker otherwise exempted from this chapter under RCW 19.146.020(1)(e), (g), or (4)</u> to:

> . . . .
> (6) Fail to make disclosures to loan applicants and noninstitutional investors as required by RCW 19.146.030 and any other applicable state or federal law;
>
> . . . .
> (11) Fail to comply with any requirement of the truth-in-lending act, 15 U.S.C. Sec. 1601 and Regulation Z, 12 C.F.R. Sec. 226. . . .

RCW 19.146.0201(6) and (11) (emphasis added).

RCW 19.146.030(1) requires that a borrower, within three business days of receiving a loan application, receive a "full written disclosure containing an itemization and explanation of all fees and costs that the borrower is required to pay in connection" with obtaining the loan. TILA requires a written itemization of the amount of the finance charges paid to other parties by the creditor on the consumer's behalf and identification of such parties. See 15 U.S.C. § 1601. Regulation Z sets forth the specific content and timing of the disclosures. See 12 C.F.R. § 226.

The loan application in this case was taken on January 6, 2006. It is undisputed that the disclosures required by RCW 19.146.030, TILA and Regulation Z were not provided to the Debtors, or provided within the required three day period. See RCW 19.146.030(1), (2)(a)

MEMORANDUM DECISION - 11

and (b). In fact, the earliest that a breakdown of the anticipated loan fees was disclosed was when the Debtors received documents to be signed and returned to Lending and Leasing in early February, 2006. Accordingly, both Lending and Leasing and A+ Plus violated the MBPA; Lending and Leasing for failing to be licensed and both Defendants for failing to comply with the disclosure requirements.

The Plaintiff asserts that a violation of the MBPA is a per se violation of the CPA pursuant to RCW 19.146.100. The Defendants allege that this section does not apply to A+ Plus because RCW 19.146.020(2) provides that a mortgage broker exempt under (1)(e) of that section must still comply with RCW 19.146.0201 through 19.146.080, but does not specifically refer to RCW 19.146.100. This is not a fair interpretation of the statute. Presumably, RCW 19.146.100 is not listed because it is not a statute that contains compliance requirements. Notably, RCW 19.146.100 provides that "[a]ny violation of this chapter" is an "unfair or deceptive act or practice and unfair method of competition in the conduct of trade or commerce in violation of RCW 19.86.020." The statute does not provide that any violation, except those otherwise exempt from the licensing requirements, is a violation of the CPA. It specifically provides that <u>any</u> violation is a per se violation of the CPA. Lastly, the Defendants' interpretation would leave private parties aggrieved in such circumstances without a remedy. The Court concludes that A+ Plus committed a violation of the MBPA, and is therefore liable under the CPA.

**4.     Usury**

Even if A+ Plus were not liable under the CPA through the MBPA, the Court also concludes that because this is a consumer loan, the loan was usurious pursuant to RCW 19.52.020. RCW 19.52.020(1) provides that a rate of interest is legal so long as it does not

MEMORANDUM DECISION - 12

exceed the higher of 12 percent per annum or four percentage points above the equivalent coupon issue yield of the average bill rate for 26 week treasury bills as determined during the calendar month immediately proceeding the establishment of the rate by the written agreement of the parties. The total amount of the loan was for $20,000. The Debtors pre-paid six months of interest at a rate of twelve percent, or $1,200. The administrative fees and points to Lending and Leasing were $3,500 and points to A+ Plus were $2,000. Such setup charges are treated as interest. See Aetna Fin. Co. v. Darwin, 38 Wn. App. 921, 926, 691 P.2d 581, 585 (1984), review denied, 103 Wn.2d 1019 (1985) (charges for making a loan and for the use of money are interest). The total interest charged on this $20,000 loan for six months was $6,700 or 33.5%. This amount far exceeds the limits imposed by RCW 19.52.020 for a consumer loan and is usurious.

### 5. TILA and Regulation Z

As stated above, the Defendants also violated TILA and Regulation Z. Although such claims were not specifically plead as a separate cause of action in the complaint, they may still be considered by the Court. Pursuant to Fed. R. Bankr. P. 7008, which incorporates Fed. R. Civ. P. 8, it is not necessary to set forth a specific cause of action in a complaint. Rather, all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the pleading requirements is give the defendant fair notice to properly prepare a defense. In this case, the Defendants had fair notice that relief was also being sought under TILA and Regulation Z. Such relief was requested by the Plaintiff in the pleadings filed and specifically addressed by the Defendants in their Trial Brief. See Defendants' Trial Brief at 8-9. In addition, compliance with TILA and Regulation Z are required by the CLA and MBPA, which were specifically plead.

As set forth in detail in the section regarding the MBPA, the Defendants failed to make the disclosures required by TILA and Regulation Z. Any creditor who fails to comply with TILA is liable for damages and reasonable attorney fees pursuant to 15 U.S.C. § 1640(a). Thus, even if A+ Plus was exempt from the MBPA or Consumer Protection Act, as this is a consumer loan, it would still be liable to the estate under TILA and Regulation Z.

### 6. Consumer Protection Act

A violation of the MBPA and the state usury statute are per se violations of the Consumer Protection Act. RCW 19.146.100; RCW 19.52.036. Any person injured by a violation of the CPA can recover their actual damages, together with the costs of the suit, including reasonable attorney fees. In addition, the court may in its discretion triple the damage award, up to an amount that does not exceed $10,000 dollars. RCW 19.86.090.

### 7. Damages

In closing arguments, counsel for the Defendants argued that the Plaintiff has not alleged actual damages in this case because the Debtors did not pay out of pocket fees and no monies were paid back to the Defendants prior to the Debtors filing bankruptcy. This is a circular argument. Despite the bankruptcy filing, the fees paid out of the loan proceeds still constitute a substantial portion of the debt owed to the Defendants. This debt constitutes a right to payment and remains an obligation of the Debtors and now the estate. Actual damages have been sustained as the Plaintiff succeeds to the rights of the Debtors and has in effect sustained the losses suffered by the them. Further, the statutes cited above provide authority for the Court to award damages.

According to the Estimated Buyer's/Borrower's Settlement Statement (Plaintiffs' Exhibit 3), the fees charged on this loan consist of the following:

MEMORANDUM DECISION - 14

| | |
|---|---|
| Loan Charges to A+ Plus Cash, L.L.C. | |
|     Points to Lending & Leasing 4-U | $1,500 |
|     Administration Fee to Lending & Leasing 4-U | $500 |
|     Doc Prep to Kenlynn A. Gallinger | $600 |
|     Points to A+ Plus Cash, L.L.C. | $2,000 |
|     6 Mo. Pre-Paid Interest to A+ Plus Cash, L.L.C. | $1,200 |
| Broker Fee to Craig Stevenson | $1,500 |

The Plaintiff is not entitled to an award for the $1,200 included in the fees for six months of pre-paid interest, as the measure of damages is limited to the amount in excess of 12%, which is the amount the Defendants can legally charge under RCW 19.52.020(1). Also, the document preparation fee paid to Gallinger of $600 is not recoverable. Thus, the fees at issue in this case total $5,500. Such fees were not properly disclosed in violation of the MBPA, TILA and Regulation Z, and exceed the state usury statute. These violations entitle the Plaintiff to a damage award under the CPA. Although the Defendants also violated TILA and Regulation Z, the Plaintiff has failed to establish with any evidence or case law an independent entitlement to damages under 15 U.S.C. § 1640 greater than what is available under the CPA.

Under the CPA, the correct measure of damage is the total amount of fees improperly charged on the loan without proper disclosure, or $5,500. The Court declines to award any further damages to the Plaintiff under RCW 19.86.090. It is recognized that the Plaintiff has succeeded in setting aside the deed of trust of A+ Plus securing the Graham Property. Further, the costs incurred by the Defendants in defending this action, the damages awarded by this memorandum decision, and the attorney fees and costs to be awarded to the Plaintiff are a sufficient deterrent to future wrongful conduct.

The Plaintiff is therefore entitled to an award for actual damages sustained by the estate against Lending and Leasing in the amount of $3,500, and against A+ Plus in the

amount of $2,000. The Plaintiff is also entitled to an award of reasonable attorney fees and costs, joint and severable, against both Defendants. The Court will consider such request upon receipt of a separate application for fees and costs, with appropriate notice and a hearing.

DATED: December 6, 2007

_Paul B. Snyder_
_____
Paul B. Snyder
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 16